**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 10-4725**
_____

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

RONNIE THOMAS, a/k/a Skinny Suge, a/k/a Tall Vialz, a/k/a
Rodney Thomas,

        Defendant - Appellant.

_____

**No. 10-4729**
_____

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

SHERMAN PRIDE, a/k/a Dark Black, a/k/a DB,

        Defendant - Appellant.

_____

Appeals from the United States District Court for the District
of Maryland, at Baltimore.  William D. Quarles, Jr., District
Judge. (1:08-cr-00086-WDQ-7; 1:08-cr-00086-WDQ-11)

_____

Argued:  May 18, 2012        Decided:  July 20, 2012

_____

Before KEENAN, WYNN, and FLOYD, Circuit Judges.

_____

Affirmed by unpublished opinion. Judge Wynn wrote the opinion, in which Judge Keenan and Judge Floyd concurred.

**ARGUED:** Arthur Samuel Cheslock, Baltimore, Maryland; Matthew W. Greene, GREENE LAW GROUP, PLLC, Fairfax, Virginia, for Appellants. Michael Clayton Hanlon, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Rod J. Rosenstein, United States Attorney, Christopher Mason, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

Defendants Ronnie Thomas and Sherman Pride appeal their jury trial convictions of violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d), by conspiring to participate in a racketeering enterprise ("RICO Conspiracy").[1] Defendants challenge, among other things, the sufficiency of the evidence for the jury's finding that the RICO Conspiracy included conspiracy to commit murder as an objective and certain evidentiary determinations by the district court. Finding no error, we affirm.

I.

Ronnie Thomas and Sherman Pride were indicted for RICO Conspiracy for their participation in the Baltimore gang known as the Tree Top Piru, a subset of the Bloods gang ("TTP"). At trial, the Government's evidence showed that TTP was an organization engaged in drug trafficking, robbery, beatings, and murder, and that Defendants were high-ranking TTP members.

Steve Willock, a government witness and TTP leader, testified that TTP's primary objectives included supporting drug transactions inside prisons; collecting debts owed on those drug

---

[1] Pride was also convicted of conspiracy to distribute 50 grams or more of crack cocaine. This conviction, however, is not the subject of this appeal.

transactions; carrying out acts of violence against TTP rivals; and generally expanding TTP's influence. As TTP's leader, Willock issued "open letters," which the entire TTP membership was encouraged to read. The letters discussed TTP's history and structure, and identified the agenda and obligations of TTP's leaders and members. In his open letters and testimony, Willock identified Thomas (along with others) as controlling West Baltimore and Pride as controlling the eastern shore of Maryland, which meant that the Defendants had the power to give orders within their geographic area and decide whether to have a person killed. In one letter, Willock conveyed a conversation between himself and Thomas. Thomas had asked Willock's permission to conduct a revenge killing against someone who had killed another TTP member.

Van Sneed, a government witness and another one of TTP's high-ranking members, testified about Thomas's participation in TTP. Sneed testified that Thomas had attended TTP meetings; paid and collected dues, some of which was used to purchase guns for the gang; and agreed to assist Sneed in selling heroin. Sneed also testified about the so-called Stop Snitching videos. Sneed appeared in one such video and named people for "snitching" to the police. The Government presented clips of the Stop Snitching 2 video ("Stop Snitching 2"), in which Thomas stars as a rapper and references his TTP membership and illegal

4

activities.  The Government played recordings of calls in which Thomas made arrangements with other TTP members to assault and rob a storeowner who was selling Stop Snitching 2 without his permission.

The Government also presented extensive evidence of other TTP members' criminal activities.  Taken together, the Government's evidence established that TTP was a drug-trafficking organization whose members used violence to acquire and preserve drug-trafficking territory, and that Defendants had participated in TTP's affairs with knowledge of TTP's criminal purposes with the intent that those purposes be carried out.

Following eight days of testimony, a jury convicted Defendants of RICO Conspiracy, and Pride of the additional charge of narcotics conspiracy.  The jury found that the RICO Conspiracy included narcotics trafficking offenses, robbery, and conspiracy to commit murder.  The district court sentenced Thomas to 235 months of imprisonment, and Pride to 292 months of imprisonment.  These appeals followed.

## II.

### A.

Defendants argue that the Government's evidence was insufficient to sustain the jury's finding that the RICO

5

Conspiracy included conspiracy to commit murder as an enterprise objective. We disagree.

1.

This Court reviews the denial of a motion challenging the sufficiency of the evidence de novo. United States v. Penniegraft, 641 F.3d 566, 571 (4th Cir. 2011). "In reviewing the sufficiency of the evidence following a conviction, the court is to construe the evidence in the light most favorable to the government, assuming its credibility, and drawing all favorable inferences from it, and will sustain the jury's verdict if *any* rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." Id. at 571-72. "If there is substantial evidence to support the verdict, after viewing all of the evidence and the inferences therefrom in the light most favorable to the Government, then we must affirm." United States v. Murphy, 35 F.3d 143, 148 (4th Cir. 1994). "[I]n the context of a criminal action, substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc).

A defendant bringing a sufficiency challenge bears a "heavy burden." United States v. Hoyte, 51 F.3d 1239, 1245 (4th Cir. 1995). In evaluating the sufficiency of evidence, this Court does not review the credibility of witnesses and assumes the jury resolved all contradictions in the testimony in favor of the Government. United States v. Foster, 507 F.3d 233, 245 (4th Cir. 2007). "Reversal for insufficient evidence is reserved for the rare case 'where the prosecution's failure is clear.'" United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) (quoting Burks v. United States, 437 U.S. 1, 17 (1978)).

2.

To convict the Defendants of RICO Conspiracy,[2] the Government was required to prove beyond a reasonable doubt that:

- a criminal enterprise existed;

- the enterprise affected interstate or foreign commerce;

- Defendants were associated with or employed by the enterprise;

---

[2] Under 18 U.S.C. § 1962(c), it is unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." A person may also be charged, as Defendants were in the present case, under 18 U.S.C. § 1962(d) for conspiring to violate § 1962(c) (i.e., RICO Conspiracy). See Salinas v. United States, 522 U.S. 52, 65 (1997).

7

- the enterprise engaged in a pattern of racketeering activity;[3] and

- Defendants knowingly and willfully became members of the conspiracy to further the unlawful purposes of the enterprise.

See J.A. 2342, 2355-56, 2521. Notably, Defendants do not challenge the sufficiency of the Government's evidence regarding TTP's status as a criminal enterprise, TTP's participation in interstate or foreign commerce, Defendants' association with or employment by TTP, or Defendants' knowing and willing membership in TTP to further its unlawful purposes. Defendants also do not challenge the sufficiency of the Government's evidence as to the jury's finding that the RICO Conspiracy included robbery and narcotics trafficking as objectives. Rather, Defendants' sufficiency argument is limited to the jury's finding that conspiracy to commit murder was a TTP objective.

Our review of the record reveals substantial evidence that the RICO Conspiracy included conspiracy to commit murder as an enterprise objective. Willock testified that TTP members advanced in TTP rank by "putting in work," which he described as meaning, among other things, committing violent acts such as "killing somebody." J.A. 539. Willock further testified that Defendants were "leaders" within TTP with the power to "put

---

[3] A "pattern" requires proof of at least two predicate acts of racketeering activity. See 18 U.S.C. § 1961(5).

8

somebody on the menu," which he described as meaning that Defendants could determine, among other things, when "somebody needs to die." J.A. 498-99. Similarly, Sneed testified that TTP purchased guns to do "anything that needed to be done, whether it was a murder, a robbery, whatever." J.A. 1359. Sneed also corroborated Willock's testimony that the term "putting in work" "mean[t] just about anything, from standing out there selling [drugs] . . . to robbing, to killing, to whatever." J.A. 1396. Finally, Pride described TTP's color symbology in a letter entered into evidence: "[The color burgundy] just means that we are anybody killers. . . . Any hood that disrespects [us] will get it." J.A. 1641. As such, the testimony of Willock and Sneed, as well as the letter from Pride, evidenced the criminal objectives of TTP, which included murder.

Defendants attempt to rely on Richardson v. United States, 526 U.S. 813, 819 (1999), for the proposition that the Government must prove specific acts of murder to sustain a conviction for RICO Conspiracy with conspiracy to commit murder as an enterprise objective. In Richardson, the Supreme Court held that a violation of 21 U.S.C. § 848(a), the continuing criminal enterprise statute, required a jury to find specific criminal violations committed by the defendant as part of a "continuing series of violations." 526 U.S. at 815. But the

9

statute at issue in Richardson, 21 U.S.C. § 848(a), is not at issue here. Instead, 18 U.S.C. § 1962(d) controls and Salinas v. United States, 522 U.S. 52 (1997), is the case that directly addresses the application of that statute.

In Salinas, the Supreme Court explained that "[t]here is no requirement of some overt act or specific act" to be proven for a RICO Conspiracy conviction. 522 U.S. at 63. Instead, a RICO Conspiracy may "exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense." Id. The "partners in the criminal plan must [only] agree to pursue the same criminal objective" regardless of whether that criminal objective is ever started or carried out. Id.; see also United States v. Yannotti, 541 F.3d 112, 129 (2d Cir. 2008) ("Indeed, to secure [the defendant's] conviction for RICO conspiracy, the government was not required to prove the actual commission of a single predicate act by [the defendant] or any other conspirator."); United States v. Browne, 505 F.3d 1229, 1263-64 (11th Cir. 2007) (noting that RICO Conspiracy charges do not require proof of an overt act); United States v. Corrado, 286 F.3d 934, 937 (6th Cir. 2002) ("Unlike the general conspiracy statute, § 1962(d) requires no 'overt or specific act' in carrying the RICO enterprise forward.").

Defendants concede that "numerous government witnesses testified that the TTP Bloods employed murder as either one of

10

the group's objectives or as a means to accomplish an objective." Appellants' Br. at 55. We agree and, accordingly, conclude that the Government's evidence was sufficient for a reasonable juror to find that TTP's racketeering activities included conspiracy to commit murder.[4]

B.

Defendants next argue that the district court erred in allowing Detective Christopher Hodnicki to testify as an expert in the history of the gang known as the Bloods. First, Defendants challenge Hodnicki's qualifications and methodology. Second, Defendants allege that Hodnicki's testimony was a conduit for testimonial hearsay, thereby violating their Confrontation Clause rights. We disagree.

---

[4] Likewise, Defendants' contention that the district court abused its discretion in instructing the jury on murder and conspiracy to commit murder as possible objectives of the RICO Conspiracy is also without merit. For the reasons stated above as to why the Government's evidence was sufficient to sustain the jury's finding that the RICO Conspiracy included conspiracy to commit murder as an objective, we also conclude that the challenged instructions were supported by an evidentiary foundation. See, e.g., United States v. Moye, 454 F.3d 390, 403 (4th Cir. 2006) (en banc) (Motz, J., concurring) ("A court may only give a requested jury instruction if an evidentiary foundation for the instruction exists."). As such, the district court did not err in denying Defendants' motion to strike.

11

1.

"We review for abuse of discretion the district court's decision to admit expert testimony under Federal Rule of Evidence 702." United States v. Wilson, 484 F.3d 267, 273 (4th Cir. 2007); see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 158 (1999) ("Rule 702 grants the district judge the discretionary authority, reviewable for its abuse, to determine reliability in light of the particular facts and circumstances of the particular case."). "A court has abused its discretion if its decision is guided by erroneous legal principles or rests upon a clearly erroneous factual finding." United States v. Johnson, 617 F.3d 286, 292 (4th Cir. 2010) (quotation marks omitted). Put another way, an abuse of discretion only occurs when "the [district] court acted arbitrarily or irrationally in admitting evidence." Penniegraft, 641 F.3d at 574. "We review de novo, however, an evidentiary ruling implicating the Confrontation Clause." United States v. Summers, 666 F.3d 192, 197 (4th Cir. 2011).

Rule 702 of the Federal Rules of Evidence allows for opinion testimony by an expert. According to the Rule,

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data,

12

(2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. In Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), the Supreme Court, in addressing the admissibility of "scientific expert evidence," held that Rule 702 imposes a "gatekeeping" obligation on the trial judge to "ensure that any and all scientific testimony . . . is not only relevant, but reliable." 509 U.S. at 589; see also Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 261 (4th Cir. 2005) ("When a party seeks to admit any expert testimony, the district court's obligation is gate-keeping." (quotation marks omitted)). "[I]n considering the admissibility of testimony based on some 'other specialized knowledge,' Rule 702 generally is construed liberally." United States v. Hankey, 203 F.3d 1160, 1168 (9th Cir. 2000) (affirming admission of expert testifying on gang activities, colors and signs).

2.

Here, Defendants assert that Hodnicki's training and experience were insufficient for his qualification by the district court as an expert in gang history. Defendants point to the fact that Hodnicki lacked specialized degrees and that

13

his knowledge was largely based on his experience working with gangs.

Our review of the record, however, reveals that Hodnicki's testimony—which related to the history and organization of the Bloods gang, how TTP related to the overall gang hierarchy, and gang symbology and colloquialisms—was only admitted into evidence after an extensive voir dire into Hodnicki's qualifications as an expert. This examination revealed that Hodnicki had been a police officer for ten years, with experience for three years as a detective with the Gang Enforcement Team of the Criminal Intelligence Section. Additionally, upon joining the Gang Enforcement Team, Hodnicki received specialized training and attended classes on gangs and their operations. As a member of the Gang Enforcement Team, Hodnicki conducted field interviews with gang members and conducted over 6,000 hours of surveillance in the field, observing gangs and gang activity. Hodnicki also taught classes at a local community college regarding his knowledge and experience as a gang investigator.

Given the type of expert testimony proffered by the Government in this case, we conclude that the district court's assessment of its relevance and reliability was sufficiently diligent. "The Daubert factors (peer review, publication, potential error rate, etc.) simply are not applicable to this

14

kind of testimony [from a gang expert], whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." Hankey, 203 F.3d at 1168; see also Kumho Tire, 526 U.S. at 150 ("In [some] cases, the relevant reliability concerns may focus upon personal knowledge or experience."). Here, the extent of Hodnicki's knowledge and experience was sufficiently probed, and therefore the district court did not abuse its discretion.

3.

Defendants also allege that Hodnicki's testimony, which was based, among other things, upon interviews with gang members, contained testimonial hearsay in violation of their Confrontation Clause rights under the Sixth Amendment. See Crawford v. Washington, 541 U.S. 36 (2004). We recently rejected this same argument. See United States v. Palacios, 677 F.3d 234, 242-43 (4th Cir. 2012). As we stated in Palacios, while testimonial hearsay raises special concerns because it implicates a defendant's constitutional rights, "it in no way prevents expert witnesses from offering their independent judgments merely because those judgments were in some part informed by their exposure to otherwise inadmissible evidence." Id. at 243 (quotation marks omitted). Here, as in Palacios, we

15

conclude that Hodnicki's testimony did not violate Defendants' Confrontation Clause rights.

## C.

Finally, Thomas contends that the district court erred when it denied his motion to suppress the Stop Snitching 2 video pursuant to Rules 403 and 404(b) of the Federal Rules of Evidence. We disagree.

### 1.

A district court's determination of the admissibility of evidence is reviewed for an abuse of discretion. Penniegraft, 641 F.3d at 574. Generally "any evidence which tends to make the existence of a fact of consequence to an issue in the case 'more probable or less probable' than without the evidence is relevant and therefore, as a general proposition, admissible." United States v. Queen, 132 F.3d 991, 994 (4th Cir. 1997) (quoting Fed. R. Evid. 401, 402). However, even relevant evidence may be excluded "if its probative value is 'substantially outweighed'" by the possibility of unfair prejudice, confusion, delay, or redundancy. Id. (quoting Fed. R. Evid. 403). Rule 403 requires that evidence be excluded if it is "unfairly prejudicial, and, even then, only if the unfair prejudice *substantially* outweighs the probative value of the

evidence." <u>United States v. Byers</u>, 649 F.3d 197, 210 (4th Cir. 2011) (quotation marks omitted) (emphasis in original).

Against this backdrop, Rule 404(b) prohibits evidence of "'other crimes, wrongs, or acts'" solely to prove a defendant's bad character, but "[s]uch evidence . . . may 'be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" <u>United States v. Basham</u>, 561 F.3d 302, 326 (4th Cir. 2009) (quoting Fed. R. Evid. 404(b)). "Rule 404(b) is a rule of inclusion, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." <u>Byers</u>, 649 F.3d at 206 (internal quotation marks omitted).

2.

Here, <u>Stop Snitching 2</u> was relevant to Thomas's membership in TTP, as well as to TTP's activities and objectives. The excerpts shown to the jury included a clip of Thomas rapping about being a member of the Bloods and his drug dealing, as well as a scene of Thomas handling a firearm. Willock wrote numerous letters to TTP members regarding <u>Stop Snitching 2</u>'s production and dissemination. Willock also testified that TTP planned to profit from the video by trying to "get Tree Top more recognition through distribution of the DVD." J.A. 532.

Additionally, a wiretapped conversation between Thomas and another TTP member discussed the production of Stop Snitching 2 and its anticipated earnings. As such, the excerpts of Stop Snitching 2 were directly probative of the charges against Thomas.

Moreover, Thomas's contention that the probative value of Stop Snitching 2 was substantially outweighed by its unfair prejudice is without merit. To require the exclusion of evidence on a prejudice theory, Rule 403 requires more than a mere showing of "general prejudice." See Byers, 649 F.3d at 210. Rather, evidence must be unfairly prejudicial, and the probative value must be substantially outweighed by that unfair prejudice. Id. Rule 403 requires this heavier showing because all incriminating evidence is prejudicial. See United States v. Siegel, 536 F.3d 306, 319 (4th Cir. 2008). Although Stop Snitching 2 did show Thomas talking about being a gang member, discussing drugs, and handling a firearm, there is no unfair prejudice in showing Thomas on a video discussing and doing the very things with which he was charged and as to which other substantial evidence had also been presented. Therefore, we find no abuse of discretion in the district court's denial of Thomas's motion to suppress.

## III.

For the foregoing reasons, we affirm.

<u>AFFIRMED</u>