**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

       *Plaintiff-Appellant,*

v.

LAURY ARTHUR WILKS, JR.,

       *Defendant-Appellee.*

No. 09-5166

Appeal from the United States District Court
for the District of South Carolina, at Orangeburg.
Margaret B. Seymour, District Judge.
(5:08-cr-01263-MBS-1)

Argued: September 22, 2010

Decided: July 28, 2011

Before AGEE, Circuit Judge, HAMILTON, Senior Circuit
Judge, and James C. DEVER III, United States District
Judge for the Eastern District of North Carolina,
sitting by designation.

Vacated and remanded by published opinion. Senior Judge
Hamilton wrote the opinion, in which Judge Agee and Judge
Dever joined.

## COUNSEL

**ARGUED:** Vijay Shanker, UNITED STATES DEPART-
MENT OF JUSTICE, Washington, D.C., for Appellant. John

Herman Hare, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellee. **ON BRIEF:** Kevin F. McDonald, Acting United States Attorney, Robert C. Jendron, Jr., Robert F. Daley, Jr., Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellant.

---

## OPINION

HAMILTON, Senior Circuit Judge:

The issue presented is whether the good-faith exception to the exclusionary rule permits the admission of evidence obtained by a police officer who conducts a search in objectively reasonable reliance on binding appellate (in our case, Fourth Circuit) precedent that is later overruled. On June 16, 2011, the Supreme Court of the United States resolved this issue, holding that "searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." *Davis v. United States*, 2011 WL 2369583, at *3 (U.S. June 16, 2011). Because the district court's decision in this case granting the motion to suppress by the defendant, Laury Arthur Wilks, Jr., is inconsistent with *Davis*, we vacate the district court's judgment and remand for further proceedings.

I

A

On September 21, 2006, Officer Cueto of the Orangeburg Department of Public Safety stopped a car being driven by Wilks on McKinney Avenue in Orangeburg, South Carolina. Officer Cueto executed the stop because he observed that the car had an expired license plate.

Officer Cueto approached the car and explained to Wilks the purpose of the stop. Officer Cueto then asked Wilks for his driver's license, registration, and proof of insurance.[1] While Wilks was in the process of producing these materials, Officer Cueto and Wilks engaged in some small talk, during which Wilks reached under the front seat with his right hand several times, as though he was trying to reach for something. These furtive acts made Officer Cueto feel uncomfortable, so he instructed Wilks to keep his hands on the steering wheel. Officer Cueto and Wilks continued to converse, but Wilks once again reached under the front seat with his right hand.

Instead of returning to his patrol car, Officer Cueto, out of concern for his safety, remained next to the car occupied by Wilks while he contacted a police dispatcher to obtain information on the validity of Wilks' driver's license. The police dispatcher informed Officer Cueto that Wilks' license had been suspended.

Officer Cueto then ordered Wilks to exit the car, which he did. As Officer Cueto advised Wilks that he was under arrest for driving with a suspended license, Wilks "struggle[d] a little bit," (J.A. 55), which lead to his being handcuffed and placed in the back seat of Officer Cueto's patrol car.

Around this time, Officer O'Cain arrived on the scene. He was instructed by Officer Cueto to search under the front seat of the car. Officer O'Cain recovered a .380 caliber pistol from under the front seat, and then proceeded to search the rest of the car at Officer Cueto's direction. In the trunk, Officer O'Cain recovered some ammunition.

## B

On December 16, 2008, a federal grand jury sitting in the District of South Carolina charged Wilks with possession of

---

[1]The car Wilks was driving was owned by his sister.

a firearm and ammunition by a convicted felon, 18 U.S.C. § 922(g)(1). On September 19, 2009, Wilks filed a motion to suppress the evidence seized during the stop, claiming, among other things, that the search of the car violated *Arizona v. Gant*, 129 S. Ct. 1710 (2009). In *Gant*, the Supreme Court held that a car search incident to a lawful arrest is not valid where the defendant is stopped for a traffic violation, arrested, handcuffed, and placed in the back of the patrol car prior to the time of the search. *Id.* at 1719. In response to Wilks' motion, the government argued that the exclusionary rule should not apply because Officer O'Cain acted in good faith in relying on binding Fourth Circuit precedent. There was no dispute below (nor in this court) that Officer O'Cain's search of the front seat was permissible at the time of the search under binding Fourth Circuit precedent. *See United States v. Milton*, 52 F.3d 78, 80 (4th Cir. 1995) (holding that, once a person is lawfully arrested following a traffic violation, a police officer may conduct a search of the passenger compartment of an automobile, including the glove compartment, even if the arrestee has been separated from the automobile prior to the search of the passenger compartment).

Following a hearing, the district court granted the motion to suppress. The district court was "persuaded by those courts declining to apply the good-faith exception" in these circumstances, and noted that this court previously had applied *Gant* in unpublished cases pending on appeal, which the district court observed was a signal of our intent to apply *Gant* retroactively. (J.A. 41). The district court also noted that "application of the good-faith exception would be contrary to the [*Gant*] Court's admonition that '[w]e have never relied on *stare decisis* to justify the continuance of an unconstitutional police practice.'" (J.A. 41) (quoting *Gant*, 129 S. Ct. at 1722). The government filed a timely notice of appeal.

On September 22, 2010, we heard oral argument. On November 1, 2010, the Supreme Court granted certiorari in *Davis*. We placed this case in abeyance, pending the Court's

decision in *Davis* on January 21, 2011. As *Davis* was decided on June 16, 2011, this case is ripe for decision.

## II

The government acknowledges that Officer O'Cain's search of the car violated Wilks' Fourth Amendment rights, because, at the time of Officer O'Cain's search, Wilks was secured in the back of Officer Cueto's patrol car. However, the government argues that the remedy for such a violation (the exclusionary rule) should not apply because Officer O'Cain, in conducting the search, acted in objectively reasonable reliance on binding Fourth Circuit precedent that was later overruled.

In *Davis*, the Supreme Court dealt with a case with facts similar to the case currently before this court. The search at issue took place before the Supreme Court decided *Gant*. *Davis*, 2011 WL 2369583, at *5. Police officers conducted a routine traffic stop which resulted in the arrests of both the driver and the passenger (Davis). *Id.* Both the driver and Davis were handcuffed and placed in the back of separate patrol cars. *Id.* In the subsequent search of the passenger compartment of the car, the police officers recovered a revolver inside Davis' jacket pocket. *Id.*

Davis was indicted in the Middle District of Alabama on one count of possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1). *Davis*, 2011 WL 2369583, at *5. Davis moved to suppress the revolver on the basis of a Fourth Amendment violation, though he acknowledged that the search complied with existing Eleventh Circuit precedent. *Id.* (citing *United States v. Gonzalez*, 71 F.3d 819, 822, 824–827 (11th Cir. 1996) (upholding a substantially contemporaneous search of car incident to arrest)). The district court denied the motion to suppress, and, following his conviction, Davis appealed the conviction to the Eleventh Circuit. *Id.*

While Davis' appeal was pending, the Supreme Court decided *Gant*. The Eleventh Circuit recognized that Davis' Fourth Amendment rights were violated by the search under *Gant*, but refused to apply the exclusionary rule, because "'penalizing the [arresting] officer' for following binding appellate precedent would do nothing to 'dete[r] . . . Fourth Amendment violations.'" *Id.* (quoting *United States v. Davis*, 598 F.3d 1259, 1265–66 (11th Cir. 2010)).

The Supreme Court in *Davis* framed the issue to be decided as whether the exclusionary rule should be applied when police officers conduct a search in compliance with binding appellate precedent that is later overruled. *Id.* at *3. The Supreme Court began its analysis by noting that the exclusionary rule is a "prudential" doctrine, created by the Court to "compel respect for the constitutional guaranty." *Id.* at *5 (citations and internal quotation marks omitted). Moreover, exclusion of evidence is "not a personal constitutional right, nor is it designed to redress the injury occasioned by an unconstitutional search." *Id.* (citation and internal quotation marks omitted). Rather, the purpose of the exclusionary rule is to "deter future Fourth Amendment violations." *Id.* "Where suppression fails to yield appreciable deterrence, exclusion is clearly . . . unwarranted." *Id.* (citation and internal quotation marks omitted).

However, a demonstration of meaningful deterrence, although a precondition for application of the exclusionary rule, is not, standing alone, sufficient to require application of such rule. *Id.* Application of the exclusionary rule also involves weighing the societal costs of applying the rule, because exclusion of evidence "almost always requires courts to ignore reliable, trustworthy evidence bearing on guilt or innocence." *Id.* Exclusion of evidence only is appropriate if the deterrence benefits of suppression outweighs the heavy societal costs of exclusion. *Id.* The Court recognized that, when the police deliberately, recklessly, or grossly negligently disregard the defendant's Fourth Amendment rights,

"the deterrent value of exclusion is strong and tends to out-weigh the resulting costs." *Id.* at \*6. However, when the police act with an "objectively reasonable good-faith belief that their conduct is lawful, . . . or when their conduct involves only simple, isolated negligence, . . . the deterrence rationale loses much of its force, and exclusion cannot pay its way." *Id.* (citations and internal quotation marks omitted).

Applying this standard, the Supreme Court concluded that the application of the exclusionary rule was unwarranted, because of the "absence of police culpability." *Id.* at \*8. The Court observed that exclusion of the evidence would not result in meaningful deterrence of police misconduct. *Id.* Moreover, the police conduct was not sufficiently culpable to trigger application of the exclusionary rule. *Id.* The Court noted that the police officers did not deliberately, recklessly, or with gross negligence violate Davis' Fourth Amendment rights. *Id.* The Court further noted that the case did not involve "recurring or systemic negligence" on the part of the police. *Id.* (citation and internal quotation marks omitted).

The Court bolstered its decision in *Davis* by noting that, in the twenty-seven years of practice under the good-faith excep-tion, the Court had never applied the exclusionary rule to "nonculpable, innocent police conduct." *Id.* The Court recog-nized that, had the police officers "reasonably relied on a war-rant in conducting their search, . . . or on an erroneous warrant record in a government database, . . . the exclusionary rule would not apply." *Id.* (citations and internal quotation marks omitted). The Court further recognized that, "if Congress or the Alabama Legislature had enacted a statute codifying the precise holding of the Eleventh Circuit's decision in *Gonza-lez*," the good-faith exception would apply and permit the admission of the evidence. *Id.* According to the Court, the same should be said about an error made by an appellate court. *Id.*

The Supreme Court in *Davis* also rejected the argument that applying the good-faith exception to the exclusionary rule would conflict with the Court's retroactivity jurisprudence. *Id.* at *10.[2] The Court opined that the argument conflated the principle of retroactivity with the question of what is the appropriate remedy for a Fourth Amendment violation. *Id.* According to the Court, "retroactive application of a new rule of substantive Fourth Amendment law raises the question whether a suppression remedy applies; it does not answer that question." *Id.* Rather, to determine whether the exclusionary rule applies in a given case, a court must analyze whether any exceptions to the exclusionary rule apply, such as the good-faith exception, and whether the purpose of the exclusionary rule is "effectively advanced" in the case. *Id.* (citation and internal quotation marks omitted).

The Supreme Court's decision in *Davis* is on all fours with the case currently before this court. There is no dispute that Officer O'Cain's search of Wilks' car was in compliance with binding Fourth Circuit precedent that was later overruled by the Supreme Court. In such a case, per *Davis*, the exclusionary rule does not apply. Thus, the district court erred when it applied the exclusionary rule in this case.

## III

For the reasons stated herein, the judgment of the district court is vacated and the case is remanded for further proceedings.

*VACATED AND REMANDED*

---

[2]Under this jurisprudence, "a decision of [the Supreme Court] construing the Fourth Amendment is to be applied retroactively to all convictions that were not yet final at the time the decision was rendered." *United States v. Johnson*, 457 U.S. 537, 562 (1982); *see also Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) (noting that, even decisions constituting a "clear break" with past precedent have retroactive application).