**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-4167**

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

     v.

REMONE LEON ROBINSON, a/k/a Ramone Leon Robinson,

              Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Statesville. Richard L. Voorhees, District Judge. (5:08-cr-00020-RLV-DSC-1)

Argued: September 23, 2011        Decided: December 2, 2011

Before KING, SHEDD, and FLOYD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Elizabeth Anne Blackwood, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF:** Claire J. Rauscher, Director, Kevin A. Tate, Assistant Federal Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Anne M. Tompkins, United States Attorney, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

After conducting a traffic stop, officers arrested Remone Leon Robinson for driving without a license. They secured him in the back of a patrol car and proceeded to search his vehicle. The officers ultimately found crack cocaine in a compartment in the driver's seat. They also recovered a firearm in the road along the route Robinson was driving. A jury convicted Robinson of possession with intent to distribute crack cocaine, but acquitted him of two firearm charges. At his sentencing hearing, the district court upwardly departed on the ground that Robinson's criminal history category substantially underrepresented his likelihood of committing other crimes. Robinson appealed, raising four issues. He argues that the district court erred in denying his motion to suppress, in upwardly departing, in failing to make findings of fact or state conclusions of law when denying his motion to suppress, and in allowing the introduction of testimony about a prior arrest during which the arresting officer recovered a firearm and drugs on his person. We affirm.

I.

A.

In the early morning hours of May 2, 2003, Officers Richard Lee Whitman and Patrick Lynn Clark were conducting a routine

2

property check at an apartment complex in Catawba County, North Carolina. While standing next to their marked patrol cars, they observed Robinson, who was driving a Cadillac, begin to pull into the apartment complex's parking lot. When Robinson's headlights shone upon the officers and their patrol cars, he immediately swerved to leave the parking lot, almost striking the curb. Based on his actions, the officers suspected he might be impaired and decided to pursue him.

Officer Whitman drove to catch up with Robinson. At one point, he estimated Robinson to have increased his speed to 65 mph in a 35 mph zone. As Officer Whitman followed Robinson, he ran over a hard, metal-like object in the roadway. Eventually, Officer Whitman caught up with Robinson and conducted a stop with Officer Clark providing backup.

After Robinson stopped, Officer Whitman approached the driver's side and requested his license. Robinson responded that he did not have one. Officer Whitman placed Robinson under arrest for driving without a license, handcuffed him, and secured him in the back of his patrol car. At that time, Officer Whitman called another officer, Officer Mark Duncan, and asked him to find the hard object he ran over in his car, suspecting it might have been a firearm.

With Robinson secured in the back of the patrol car, Officer Whitman returned to Robinson's vehicle to conduct a

3

search incident to arrest. He searched all areas of the car to determine if there was anything illegal in it. Although he observed a digital scale sitting on the front passenger seat, he found nothing illegal. At some point thereafter, Officer Duncan notified Officer Whitman that he found a firearm in the road.

Officer Whitman called a canine officer to bring his drug-sniffing dog. The canine officer walked the drug-sniffing dog around the car, and the dog alerted to the backside of the automobile on the driver's side. The canine officer opened up the driver's door, and the dog alerted to the driver's seat, where Officer Whitman discovered a small compartment holding a sandwich baggie that contained crack cocaine.

B.

On April 25, 2008, a grand jury returned a three-count indictment, charging Robinson with possession with intent to distribute at least five grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), possession of a firearm in furtherance of a drug-trafficking offense, in violation of 18 U.S.C. § 924(c), and possession of a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The case first went to trial on November 17, 2008, but it ended in a mistrial the next day.

4

Prior to his retrial, Robinson filed a motion to suppress. In the motion, he argued the traffic stop was unlawful. He also maintained that the officers' warrantless search of his automobile was illegal. The search-incident-to-arrest exception to the warrant requirement was inapplicable, he urged, because the officers had secured him in the back of the patrol car at the time of the search. He requested an evidentiary hearing on the motion. The following day, Robinson also filed a motion in limine to preclude the government from introducing evidence of prior bad acts.

Robinson's second trial began on January 7, 2009. At trial, he requested that the district court rule on his motion to suppress. The district court summarily denied it without conducting an evidentiary hearing or making findings of fact or stating conclusions of law. Robinson's attorney, however, failed to object to the summary nature of the denial.

During the trial, the district court allowed the government to present testimony from Officer Clark about his prior arrest of Robinson, subject to a limiting instruction. Immediately following the limiting instruction, Officer Clark testified that, on March 10, 2000, he arrested Robinson pursuant to an outstanding warrant. He stated that he recovered a firearm and crack cocaine during a pat-down of Robinson. The crack cocaine, he recounted, was in a little, clear plastic bag located in

5

Robinson's pants pocket. He testified that Robinson pleaded guilty to a gun charge, but that drug charges were never brought.

On January 9, 2009, the jury returned a verdict convicting Robinson of the possession with intent to distribute charge and acquitting him of the two firearm offenses.

Robinson subsequently filed a motion for a new trial. He based the motion on Arizona v. Gant, 129 S. Ct. 1710 (2009), which the Supreme Court decided after Robinson's conviction, but prior to his sentencing hearing. Robinson contended that, in light of Gant, the officers' search of his automobile was unlawful and unjustified under the search-incident-to-arrest exception. The district court denied the motion in an eight-page order.

## C.

Robinson's Presentence Investigation Report (PSR) reflected a criminal history category of VI. Its calculation of Robinson's criminal history included convictions for felony possession of cocaine stemming from offenses occurring on June 5, 2000, and September 16, 2000 (2000 offenses). The PSR also provided an offense level of 26. The government objected to the PSR's lack of a two-level enhancement for possession of a firearm in connection with a drug offense. The district court

agreed with the government and assigned the two-level enhancement, making Robinson's offense level 28. As a result, Robinson's Sentencing Guidelines range was 140 to 175 months of imprisonment.

Prior to Robinson's sentencing hearing, the government filed a motion for an upward departure, asserting that Robinson's criminal history category substantially underrepresented his criminal history. The government requested that the district court sentence Robinson as a de facto career criminal, which would assign him an offense level of 37. In the alternative, it asked the district court to move incrementally, level-by-level, to a higher offense level of 33 to reflect accurately Robinson's criminal history.

At Robinson's sentencing hearing on January 25, 2010, the district court allowed the government to present evidence in support of its motion. This evidence included, among other things, evidence of the conduct underlying Robinson's prior convictions for felony possession of cocaine arising out of his 2000 offenses. The government produced an officer who arrested Robinson for those offenses. The officer recounted that the amount of crack cocaine recovered from Robinson in both instances was sufficient to charge him with possession with intent to distribute. A probation officer also testified that

Robinson was originally charged with possession with intent to sell and deliver for both offenses.

After hearing the evidence, the district court granted the government's motion for an upward departure. It concluded by a preponderance of the evidence that, with respect to the 2000 offenses, Robinson's conduct actually amounted to possession with intent to sell and deliver, even though he was convicted of only felony possession. As a result, the district court expressed concern about Robinson's likelihood of recidivism. The district court noted that it could sentence Robinson as a de facto career criminal, but, in the interest of justice, the court opted instead to move incrementally, level-by-level, to assign Robinson an offense level of 33. Thus, the district court sentenced Robinson to 293 months of incarceration and 8 years of supervised release.

## II.

Robinson's first contention is that the district court erred in denying his motion to suppress and motion for a new trial based on Arizona v. Gant.

When reviewing a district court's ruling on a motion to suppress, we will not disturb its factual findings unless they are in clear error. United States v. Massenburg, 654 F.3d 480, 485 (4th Cir. 2011). Our review of legal determinations,

8

however, is de novo.  Id.  Furthermore, we review a district court's denial of a motion for a new trial for abuse of discretion.  United States v. Robinson, 627 F.3d 941, 948 (4th Cir. 2010).

Robinson maintains that the search of his vehicle was unconstitutional in light of Arizona v. Gant.  In Gant, the Supreme Court held that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest."  129 S. Ct. at 1723. Robinson notes that, because the officers had secured him in the patrol car when they searched his vehicle, he was not within reaching distance of the vehicle's passenger compartment.  He also observes that the officers arrested him for driving without a suspended license, so it was not reasonable for them to believe that his vehicle contained evidence of the offense of arrest.  Thus, he insists, the warrantless search of his vehicle was unconstitutional, and because the subsequently seized drugs and digital scale were fruits of the illegal search, they must be suppressed.

The Supreme Court's recent decision in Davis v. United States, 131 S. Ct. 2419 (2011), and our even more recent decision in United States v. Wilks, 647 F.3d 520 (4th Cir.

9

2011), foreclose Robinson's contentions.[*]  In <u>Davis</u>, the Supreme Court held that "searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule."  131 S. Ct. at 2423-24.  It determined that such searches fall within the good-faith exception to the exclusionary rule.  <u>Id.</u> at 2434.  Thus, the Court declined to apply the exclusionary rule when an officer's search incident to arrest of an automobile complied with prevailing judicial precedent at the time, but was subsequently deemed unconstitutional by <u>Gant</u>.  <u>Id.</u> at 2425-26, 2434.  Since <u>Davis</u>, we have recognized that, prior to <u>Gant</u>, our precedent allowed

---

[*] We note that the parties filed their briefs before the Supreme Court decided <u>Davis</u>.  After the Court issued its opinion in <u>Davis</u> and we decided <u>Wilks</u>, we requested supplemental briefing on the effect of those two opinions on this case.  In his supplemental brief, Robinson insists that the government waived its ability to rely on these decisions by failing to raise the good-faith exception at the district court and in its opening brief.  At the district court, however, the government observed in its response to the motion for a new trial that Officer Whitman's search was based on the prevailing interpretation of <u>New York v. Belton</u>, 453 U.S. 454 (1981), that such searches were valid.  Furthermore, in the government's opening brief, it made the point that Officer Whitman's search was based on binding precedent at the time and that the enforcement of the exclusionary rule would serve no deterrent purpose.  Under these circumstances, we decline to find the government waived its ability to rely on <u>Davis</u> and <u>Wilks</u>.  Furthermore, although the district court did not rely on the good-faith exception in denying the motion to suppress, we note that we may affirm the district court on any grounds apparent from the record.  <u>See</u> <u>United States v. Smith</u>, 395 F.3d 516, 519 (4th Cir. 2005).

10

officers to conduct a search incident to arrest of the passenger compartments of an automobile even though its recent occupant was detained in the patrol car at the time. Wilks, 647 F.3d at 522. We held that where an officer's search incident to arrest was lawful under that precedent at the time of the search, "per Davis, the exclusionary rule does not apply." Id. at 524.

As in Wilks, there is no doubt that the officers' search of Robinson's vehicle was a lawful search incident to arrest under our precedent at the time. See United States v. Milton, 52 F.3d 78, 80 (4th Cir. 1995) (holding that an officer could conduct a lawful search incident to arrest of the passenger compartments of a vehicle even after its recent occupant had been arrested and separated from the vehicle). The Supreme Court decided Gant on April 21, 2009, almost six years after the search in question. Because the officers conducted their search in objectively reasonable reliance on binding appellate precedent that was valid at the time, the exclusionary rule does not apply. The district court, therefore, did not err in denying the motion to suppress or abuse its discretion in denying the motion for a new trial.

### III.

Robinson asserts that the district court erred in granting an upward departure based on its determination that his criminal

11

history category substantially underrepresented his criminal history or the likelihood that he would commit other crimes. Specifically, he challenges the district court's consideration of the conduct underlying his 2000 offenses in deciding to depart upwardly.

Our review of a district court's decision to depart upwardly is limited to ensuring that it "acted reasonably both with respect to its decision to impose such a sentence and with respect to the extent of the divergence from the sentencing range." United States v. McNeill, 598 F.3d 161, 166 (4th Cir. 2010) (quoting United States v. Hernandez-Villanueva, 473 F.3d 118, 123 (4th Cir. 2007)) (internal quotation marks omitted), aff'd on other grounds, 131 S. Ct. 2218 (2011). In assessing a district court's application of the Sentencing Guidelines, we review its factual findings for clear error and legal conclusions de novo. United States v. Hampton, 628 F.3d 654, 659 (4th Cir. 2010).

The Sentencing Guidelines allow for sentencing courts to depart upwardly when "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(a)(1). District courts may upwardly depart under § 4A1.3 even when the defendant already has a criminal

12

history category of VI.  See id. § 4A1.3(a)(4)(B).  In doing so, they must "vertically traverse to successively higher offense levels until [they] find[] a guideline range appropriate to the case."  McNeill, 598 F.3d at 166.

The United States Sentencing Commission drafted § 4A1.3(a) "in classic catch-all terms for the unusual but serious situation where the criminal history category does not adequately reflect past criminal conduct or predict future criminal behavior."  United States v. Lawrence, 349 F.3d 724, 730 (4th Cir. 2003).  The Sentencing Guidelines elaborate that "[t]he information described in [§ 4A1.3(a)] may include information concerning the following" and proceed to set forth five sources of information:

> (A) Prior sentence(s) not used in computing the criminal history category (e.g., sentences for foreign and tribal offenses).
> (B) Prior sentence(s) of substantially more than one year imposed as a result of independent crimes committed on different occasions.
> (C) Prior similar misconduct established by a civil adjudication or by a failure to comply with an administrative order.
> (D) Whether the defendant was pending trial or sentencing on another charge at the time of the instant offense.
> (E) Prior similar adult criminal conduct not resulting in a criminal conviction.

U.S.S.G. § 4A1.3(a)(2).

Robinson's primary contention is that the district court's consideration of the conduct underlying his 2000 offenses was

improper because § 4A1.3(a)(2) does not allow for it. His argument assumes that § 4A1.3(a)(2) provides an exhaustive list of permissible bases for departing upwardly under § 4A1.3. Not included in that list, he argues, are prior convictions where the underlying conduct could have yielded a conviction for a greater offense. Thus, he insists, it was improper for the district court to consider that the conduct underlying his 2000 offenses actually amounted to possession with intent to sell and deliver as opposed to felony possession, the lesser offense of which he was convicted. He notes that § 4A1.3(a)(2)(E) allows the district court to consider "[p]rior similar adult criminal conduct not resulting in a criminal conviction," but distinguishes that provision on the basis that the 2000 offenses resulted in convictions for felony possession.

Contrary to Robinson's assumption, § 4A1.3(a)(2)'s list of types of information courts can consider in upwardly departing is not exhaustive; instead, it merely provides examples. See U.S.S.G. § 1B1.1 cmt. 2 ("The term 'includes' is not exhaustive . . . ."); United States v. Porter, 439 F.3d 845, 849 (8th Cir. 2006) ("The information which may be considered by a district court when departing under § 4A1.3 is not limited to those enumerated examples listed under § 4A1.3(a)(2)."); United States v. McKenley, 895 F.2d 184, 186 (4th Cir. 1990) (noting that the list provides a "broad, noninclusive range of

14

examples"). That list, therefore, did not bind the district court in the types of information it could consider. The district court was free to consider conduct underlying past convictions in determining whether Robinson's criminal history category substantially underrepresented the seriousness of his criminal history or the likelihood that he would commit other crimes. See United States v. De Luna-Trujillo, 868 F.2d 122, 125 (5th Cir. 1989) ("'[P]rior similar adult criminal conduct' may indicate the seriousness of the past crimes and the likelihood of future crimes whether or not it has resulted in conviction." (alteration in original)).

The information about the conduct underlying Robinson's 2000 offenses provided the district court with a reasonable basis for departing upwardly. The evidence demonstrated that Robinson received lenient treatment for the offenses, which indicated that the felony-possession convictions counted in his criminal history category did not accurately reflect the seriousness of the offenses. More importantly, however, the information exposed the similarity between the conduct underlying the 2000 offenses and the offense for which he was being sentenced. The district court was sentencing Robinson for his conviction of possession with intent to distribute crack cocaine. By finding that Robinson had engaged in similar conduct before—possession with intent to sell and deliver crack

15

cocaine—the district court reasonably found a likelihood that he would engage in this conduct again. See id. ("The recidivist's relapse into the same criminal behavior . . . suggests an increased likelihood that the offense will be repeated yet again."). Because Robinson's criminal history category did not reflect the similarity between the conduct underlying his 2000 offenses and the offense for which he was being sentenced, the district court had a reasonable basis to depart upwardly to ensure that it adequately represented the likelihood that he would commit similar crimes in the future. See id. ("While the prior similar adult criminal conduct that has resulted in conviction may have already been counted under section 4A1.2(e)(1) or (2) when computing the criminal-history category, the similarity between the two offenses provides the district court with additional reason to enhance the sentence under section 4A1.3."). Thus, § 4A1.3(a)(2) did not restrict the district court in the type of information it could consider in deciding whether to depart upwardly under § 4A1.3, and the district court reasonably determined that the information regarding the conduct underlying Robinson's 2000 offenses justified such an upward departure.

Robinson also suggests that the district court's consideration of the conduct underlying his 2000 offenses in upwardly departing constitutes impermissible double counting.

16

He insists that the felony possession convictions resulting from his 2000 offenses had already been counted in his criminal history category and so it was improper to use them again as a basis for upwardly departing.

The district court did not engage in double counting when it departed upwardly based on the conduct underlying Robinson's 2000 offenses, despite the fact that the resulting convictions were counted in his criminal history category. "Double counting occurs when a provision of the Guidelines is applied to increase punishment on the basis of a consideration that has been accounted for by application of another Guideline provision or by application of a statute." United States v. Reevey, 364 F.3d 151, 158 (4th Cir. 2004) (citing United States v. Rohwedder, 243 F.3d 423, 426-27 (8th Cir. 2001)). By definition, an upward departure under § 4A1.3 is based on a finding that the defendant's criminal history category does not fully account for the seriousness of the defendant's criminal history or the likelihood that he will commit further crimes. See U.S.S.G. § 4A1.3(a)(1); United States v. Dixon, 318 F.3d 585, 588-89 (4th Cir. 2003) ("[B]y definition, this factor is not otherwise accounted for in the criminal history calculation."). The district court decided that Robinson's criminal history category did not fully account for the likelihood that he would commit other crimes because it did not consider the conduct underlying

17

his 2000 offenses, which was similar to the offense for which he was being sentenced and for which he had received lenient treatment. The district court upwardly departed to account fully for this consideration. Because double counting occurs only when a consideration has been fully accounted for in another Sentencing Guidelines provision, Rohwedder, 243 F.3d at 426-27, the district court did not double count.

IV.

Robinson's third argument is that the district court erred by failing to hold an evidentiary hearing and make findings of fact or conclusions of law when denying his motion to suppress.

Because Robinson failed to object to the district court's summary dismissal of his motion to suppress at trial, our review is only for plain error. See United States v. McIver, 470 F.3d 550, 561 (4th Cir. 2006). To obtain relief under plain-error review, he must demonstrate "(1) an error, (2) that is plain, that not only (3) affects h[is] substantial rights, but also (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Brack, 651 F.3d 388, 392 (4th Cir. 2011). In the end, whether we should correct a plain error is a matter left to our discretion. United States v. Allen, 446 F.3d 522, 530 (4th Cir. 2006).

18

Federal Rule of Criminal Procedure 12(d) requires a district court to "state its essential findings on the record" when ruling on a pretrial motion that presents factual issues. We have recognized "[w]hen material facts that affect the resolution of a motion to suppress . . . are in conflict, the appropriate way to resolve the conflict is by holding an evidentiary hearing after which the district court will be in a position to make findings." United States v. Taylor, 13 F.3d 786, 789 (4th Cir. 1994). But even when a district court fails to make explicit findings of fact, we assume it found all facts in favor of the party who prevailed on the motion to suppress. See United States v. Cardwell, 433 F.3d 378, 388 (4th Cir. 2005). Consequently, we will uphold the district court's decision on appeal "if any reasonable view of the evidence, looked at in the light most favorable to the government, will sustain the denial." United States v. Bethea, 598 F.2d 331, 333-34 (4th Cir. 1979). Although the better practice is for district courts to state conclusions of law, Rule 12 does not require them. See Fed. R. Crim. P. 12.

Robinson is unable to demonstrate a plain error that affects his substantial rights. A reasonable view of the evidence in this case, when viewed in the light most favorable to the government, sustains the district court's denial of Robinson's motion to suppress. Officer Whitman's observance of

19

Robinson speeding and his and Officer Clark's witnessing Robinson's swerving in the parking lot provided the officers with adequate justification to conduct a lawful traffic stop. Furthermore, as we have described, even if the evidence obtained from Robinson's vehicle was the fruit of an illegal search, the exclusionary rule would not apply to require its suppression. Thus, Robinson is unable to demonstrate a plain error that adversely affects his substantial rights.

V.

Robinson's final contention is that the district court erred in allowing Officer Clark to testify about recovering a firearm and drugs during his prior arrest of Robinson.

Our review of a district court's decision to admit evidence of prior bad acts under Federal Rule of Evidence 404(b) is for abuse of discretion. United States v. Penniegraft, 641 F.3d 566, 574 (4th Cir. 2011). We will not reverse a district court for admitting evidence of prior bad acts under Rule 404(b) unless we find the "decision to admit [the] evidence . . . was arbitrary and irrational." United States v. Byers, 649 F.3d 197, 206 (4th Cir. 2011) (quoting United States v. Weaver, 282 F.3d 302, 313 (4th Cir. 2002)) (internal quotation marks omitted).

Evidence of prior bad acts is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). It is inadmissible when offered "to prove the character of a person in order to show action in conformity therewith." Id. We have recognized that "Rule 404(b) is an inclusionary rule, allowing evidence of other crimes or acts to be admitted, except that which tends to prove only criminal disposition." Penniegraft, 641 F.3d at 574.

We have established essentially a four-part test for determining the admissibility of evidence of prior bad acts under Rule 404(b). See id. The evidence "must be '(1) relevant to an issue other than the general character of the defendant; (2) necessary to prove an element of the charged offense; and (3) reliable,'" and (4) "the probative value of the evidence must not be substantially outweighed by its prejudicial effect." Id. (quoting United States v. Hodge, 354 F.3d 305, 312 (4th Cir. 2004)). To satisfy the first prong and demonstrate the evidence's relevance to an issue other than general character, we require a sufficient nexus to exist between the prior act and the charged crime. United States v. Johnson, 617 F.3d 286, 297 (4th Cir. 2010). Generally, they should be "related in time, manner, place, or pattern of conduct." Id.

21

We are satisfied that Officer Clark's testimony was relevant to an issue other than Robinson's general character. The testimony was relevant to show, at the very least, absence of mistake, which Robinson made an important issue by defending on the ground that other people drove the Cadillac and that he did not know the drugs were in it. There was a sufficient nexus in manner and pattern of conduct between the acts described in Officer Clark's testimony and Robinson's charged offense to demonstrate this relevance. Officer Clark testified that, when he arrested Robinson in 2000, he recovered a plastic baggie holding crack cocaine. Similarly, Officer Whitman also recovered crack cocaine in a small sandwich baggie. This similarity suggested the absence of mistake. We therefore determine that Officer Clark's testimony was relevant to an issue other than Robinson's general character.

We likewise are of the opinion that Officer Clark's testimony satisfies the other three factors for determining the admissibility of evidence of prior bad acts. It was necessary to prove intent. See United States v. Rooks, 596 F.3d 204, 211-12 (4th Cir. 2010) (noting that the "necessary" prong does not require the evidence to be critical to the government's case, but instead focuses on whether it was "probative of an essential claim or an element of the offense" (quoting United States v. Queen, 132 F.3d 991, 997 (4th Cir. 1997)) (internal quotation

22

marks omitted)).  The evidence, which involved testimony from a police officer with personal knowledge, was reliable.  Finally, the prejudicial effect of Officer Clark's testimony did not outweigh its probative value, "especially in light of the [district] court's limiting instruction to the jury."  Id. at 212; see also United States v. Powers, 59 F.3d 1460, 1467-68 (4th Cir. 1995) (recognizing that a limiting instruction will "generally obviate any . . . prejudice").  Thus, the district court did not abuse its discretion in admitting Officer Clark's testimony.

VI.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED